THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:19-cv-00271-MR-WCM

| | |
|---|---|
| C.P.[1], ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| JOHN DOE, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion to Seal [Doc. 1]; the Plaintiff's Emergency Motion for Equitable Tolling [Doc. 3]; and the Plaintiff's Application to Proceed in District Court without Prepaying Fees or Costs [Doc. 4]. The Court will dismiss this action *sua sponte* for lack of subject matter jurisdiction.

I.     **BACKGROUND**

The Plaintiff, who identifies himself only as "C.P.," brings this action against a number of Defendants -- who are identified only as "John Doe,"

---

[1] The actual identity of the Plaintiff is unknown. The mailing envelope in which the Complaint was mailed lists the sender as "Confidential Plaintiff." [See Doc. 2-3 at 1]. A cover letter mailed with the Complaint indicates a return address belonging to "Taqi El Agabey Management" at a street address in Sheridan, Wyoming. The cover letter is signed by a person identifying himself only as "Brother El." [Doc. 2-1 at 1]. It is unclear whether this is a reference to the Plaintiff.

"R.B.," "MHI," "Officer Doe" and "Paramedic Doe" -- for damages arising from his allegedly "unlawful medical detainment" and wrongful involuntary commitment. [Doc. 2 at 3, 9]. The Plaintiff alleges that he was transported by Paramedic Doe to the emergency room of Defendant MHI without the Plaintiff's consent after Officer Doe of the Asheville Police Department and unnamed private guards "observed Plaintiff sunbathing in the nude on private property." [Id. at 11 ¶ 7]. Once at the emergency room, the Plaintiff was evaluated by Defendant R.B., a licensed clinical social worker. [Id. at 12 ¶ 9]. The Plaintiff alleges that Defendant R.B., among other things, "lacked the cultural competency to evaluate or treat Plaintiff in consideration with Plaintiff's worldview" and "made no meaningful effort to research, learn, or understand Plaintiff's history, culture, religion, or worldview" prior to filing an involuntary commitment petition. [Id. at 12 ¶ 12]. As a result, the Plaintiff contends, Defendant R.B.'s "personal and religious worldview caused her to perceive Plaintiff's comments as nonsensical and/or delusional," and he alleges that Defendant R.B. "falsified an affidavit stating that Plaintiff met the [involuntary commitment] criteria of N.C. Gen. Stat. § 122C-3(11) by exhibiting symptoms of a mental illness and predictable dangerousness." [Id. at 13 ¶¶ 15, 16].

The Plaintiff alleges that, based on Defendant R.B.'s affidavit, the Plaintiff was deprived of his liberties and unlawfully detained. [Id. at 13-14 ¶¶ 17-21]. He further alleges that while he was being unlawfully detained at MHI, Defendant John Doe "violently punched Plaintiff in the eye." [Id. at 14 ¶ 21]. The Plaintiff does not specify whether John Doe was an employee of MHI or another patient of the facility.

The Plaintiff alleges that by seeking an involuntary commitment order, Defendant R.B.

> was acting to ameliorate her own interests and that of the state . . . . In essence, RB's actions were the State's actions. By virtue of the powers and privileges granted to RB under the state's mental health statutes, RB was acting to further the interests of the state by carrying out the state's [involuntary commitment] policy.

[Id. at 15 ¶ 24]. He further alleges that Defendant R.B. "was acting in close relationship with" Officer Doe, Paramedic Doe, and an unnamed county deputy sheriff to obtain the involuntary commitment order. [Id. at 16 ¶ 25].

Based on these factual allegations, the Plaintiff asserts a number of causes of action. The Plaintiff asserts both federal question and diversity as bases for the Court's jurisdiction. With respect to his claim of diversity jurisdiction, the Plaintiff asserts that the amount in controversy exceeds $75,000. He further alleges that he is a citizen of the State of "Mohamed,"

and that the named Defendants are citizens of North Carolina. [See id. at 3 ¶ B.1.a.; 10-11 ¶¶ 2-6].[2] The Plaintiff asserts a number of state law claims against the Defendants, including claims for medical negligence/malpractice, negligence *per se*, negligent misrepresentation, "lack of informed consent," false imprisonment, assault and battery, and "vicarious liability." [Id. at 16-24].

The only federal cause of action asserted is under 42 U.S.C. § 1983. In that claim, the Plaintiff alleges that the "Defendants acted under a [sic] color of state law, custom, or policy in subjecting Plaintiff to a deprivation of his rights, privileges, and immunities secured by the Organic Constitution for the United States of America, stare decisis and federal laws. Defendants deprived Plaintiff of his liberty and property without due process of law." [Id. at 23 ¶ 58].

## II.  STANDARD OF REVIEW

Federal district courts are courts of limited jurisdiction. United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). "Thus, when a district court lacks subject matter jurisdiction over an action, the action must

---

[2] The Plaintiff also alleges that he is a Moorish-American Moslem and that his "domicile is located in the northwestern region of Northwest Amexem, % ▮▮▮▮▮▮▮ Washington ▮▮▮▮." [Doc. 2 at 10 ¶ 1] (redactions in original).

be dismissed." Id. The lack of subject matter jurisdiction is an issue that may be raised at any time. See Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 196 (4th Cir. 2008); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The burden is on the Plaintiff to plead facts sufficient to establish the existence of subject matter jurisdiction. See Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). In reviewing the Plaintiff's allegations, the Court must accept as true any "allegations for which there is sufficient factual matter to render them plausible on their face." Hutton v. Nat'l Bd. of Examiners in Optometry, Inc., 892 F.3d 613, 620 (4th Cir. 2018) (citation and internal quotation marks omitted).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

#### 1. Federal Question Jurisdiction

Title 28 of the United States Code, Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Here, the Plaintiff asserts a claim under 42 U.S.C. § 1983, alleging that the "Defendants acted under a [sic] color of state law, custom, or policy in

subjecting Plaintiff to a deprivation of his rights, privileges, and immunities secured by the Organic Constitution for the United States of America, stare decisis and federal laws. Defendants deprived Plaintiff of his liberty and property without due process of law." [Id. at 23 ¶ 58]. As the Fourth Circuit has explained:

> To implicate 42 U.S.C. § 1983, conduct must be fairly attributable to the State. The person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions. Thus, the Supreme Court has held that private activity will generally not be deemed "state action" unless the state has so dominated such activity as to convert it into state action: [m]ere approval of or acquiescence in the initiatives of a private party is insufficient.

DeBauche v. Trani, 191 F.3d 499, 506-07 (4th Cir. 1999) internal quotation marks and citations omitted).

The only defendants identified in the Complaint who appear to have been acting "under color of state law" are "Officer Doe" and "Paramedic Doe." The Plaintiff, however, does not make any plausible factual allegations that would support a § 1983 claim against these Defendants for their actions. The only allegation directly pertaining to Paramedic Doe and Officer Doe is that Paramedic Doe transported the Plaintiff to the emergency room without the Plaintiff's consent after Officer Doe, along with unidentified "private

guards," "observed Plaintiff sunbathing in the nude on private property." [Doc. 2 at 11 ¶ 7]. These allegations do not support a claim for the deprivation of the Plaintiff's civil rights by these Defendants.

With respect to Defendants MHI and John Doe, it appears on the face of the Complaint that they are, respectively, a private hospital and either an employee or patient of that private hospital. The Plaintiff has made no allegation that these Defendants have a sufficiently close relationship with state actors such that the Court could conclude that they were engaged in governmental action. As such, the Plaintiff has no basis to assert a § 1983 claim in this case against Defendants MHI and John Doe.

With respect to Defendant R.B., the Plaintiff alleges that R.B. "was acting to ameliorate her own interests and that of the state" and "was acting to further the interests of the state by carrying out the state's [involuntary commitment] policy." [Id. at 15 ¶ 24]. He further alleges that Defendant R.B. "was acting in close relationship with" Officer Doe, Paramedic Doe, and an unnamed county deputy sheriff to obtain the involuntary commitment order. [Id. at 16 ¶ 25]. Beyond these conclusory allegations, however, the Plaintiff offers no plausible facts to support his claim. Accordingly, the Plaintiff has no basis to assert a § 1983 claim in this case against Defendant R.B. either.

Without a cognizable federal claim, this Court lacks federal question jurisdiction over the Plaintiff's Complaint and thereby also lacks supplemental jurisdiction over the Plaintiff's asserted state law claims. See 28 U.S.C. § 1367(a).

### 2. Diversity Jurisdiction

Pursuant to 28 U.S.C. § 1332, this Court may exercise original jurisdiction over a civil action "where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States…." 28 U.S.C. § 1332(a)(1). Here, the Plaintiff offers no plausible factual allegations to support his assertion that the amount in controversy has been satisfied. Further, for the purposes of establishing diversity jurisdiction, the Plaintiff claims to be a citizen of the "State of Mohamed," which is a frivolous allegation. [See Doc. 2 at 3 ¶ B.1.a]. Accordingly, the Court finds that the Complaint fails to state a basis for the exercise of diversity jurisdiction in this case.

### 3. Rooker-Feldman Doctrine

Finally, the Court notes that the primary focus of the Plaintiff's Complaint appears to be to challenge the deprivation of the Plaintiff's due process rights in an involuntary commitment proceeding in a North Carolina

state court. Under the Rooker-Feldman doctrine, however, this Court does not have jurisdiction to consider these claims.

The United States Supreme Court has exclusive jurisdiction over appeals from state-court judgments. See 28 U.S.C. § 1257(a); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). As a corollary to this rule, the Rooker-Feldman doctrine prohibits "a party losing in state court . . . from seeking what in substance would be an appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994). "The Rooker-Feldman doctrine bars lower federal courts from considering not only issues raised and decided in state courts, but also issues that are 'inextricably intertwined' with the issues that are before the state court." Washington v. Wilmore, 407 F.3d 274, 279 (4th Cir. 2005) (quoting Feldman, 460 U.S. at 486). As the Fourth Circuit has explained, "if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside the jurisdiction of the federal district court." Davani v. Va. Dep't of Transp., 434 F.3d 712, 719 (4th Cir. 2006).

The Supreme Court has cautioned that Rooker-Feldman is a "narrow doctrine" which "is confined to cases of the kind from the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Accordingly, pursuant to Exxon, the Court must examine "whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If he is not challenging the state-court decision, the Rooker-Feldman doctrine does not apply." Davani, 434 F.3d at 718 (footnote omitted); Moore v. Idealease of Wilmington, 465 F.Supp.2d 484, 490 (E.D.N.C. 2006).

Throughout his Complaint, the Plaintiff appears to be challenging the validity of the involuntary commitment order issued by the state court. To the extent that the Plaintiff does not allege any injury independent of this state-court action, the Court concludes that such claims must be dismissed pursuant to the Rooker-Feldman doctrine for lack of subject matter jurisdiction. If the Plaintiff wishes to challenge the validity of the state court's commitment order, he must do so in the North Carolina state courts.

For all these reasons, the Court concludes that it lacks subject matter jurisdiction over the claims asserted in the Plaintiff's Complaint.

**B.     Use of Pseudonyms in the Complaint**

As filed, the Plaintiff's Complaint does not actually identify the Plaintiff by name.  He refers to himself only as "C.P." or "Confidential Plaintiff."  It does not appear that he has provided any residential address and instead has provided only addresses where he can receive mail.³  Any apparent reference to his actual address of residence has been redacted from the Complaint. He also has not provided any actual names for the Defendants, instead referring to them as "Does" or by abbreviations.

The Federal Rules of Civil Procedure require that a civil complaint disclose the identities of all the parties involved.  See Fed. R. Civ. P. 10(a). The Fourth Circuit has recognized that "in exceptional circumstances, compelling concerns relating to personal privacy or confidentiality may warrant some degree of anonymity in judicial proceedings, including use of a pseudonym."  Doe v. Public Citizen, 749 F.3d 246, 273 (4th Cir. 2014). Because the use of pseudonyms in litigation undermines the public's right of

---

³ The Plaintiff contacted the Clerk's Office by telephone on September 25, 2019, and requested that the address of record be updated to reflect the address of "Trust Mail" at a street address in Alpharetta, Georgia.

access to judicial proceedings, however, allowing a litigant to proceed by pseudonym is a "rare dispensation." James v. Jacobson, 6 F.3d 233, 238 (4th Cir. 1993). Thus, "when a party seeks to litigate under a pseudonym, a district court has an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." Public Citizen, 749 F.3d at 274.

The Plaintiff has shown no "extraordinary circumstances" here. The Plaintiff contends that the use of a pseudonym is necessary in order to "protect [his] privacy, prevent embarrassment, and safeguard him from any potential loss of employment…." [Doc. 1 at 3]. But these stated privacy concerns are present in nearly every type of civil litigation. On the other hand, the Court recognizes that there is a strong public interest in maintaining open court proceedings. Further, allowing this litigation to proceed anonymously would pose great prejudice to the Defendants. Balancing these competing interests, the Court concludes that the Plaintiff's stated interest in privacy and confidentiality are substantially outweighed by the public's interest in open judicial proceedings and the prejudice that would result to the Defendants. Therefore, the Plaintiff will not be permitted to

proceed in this matter anonymously. Rather, the Plaintiff will be required to use his full name, and the full names of any identified Defendants, in any future pleadings.

### C. Motion to Seal

Citing the "medical history, related facts, and history" recited in the Complaint, the Plaintiff moves to file the Complaint and all further filings in this matter under seal.

The press and the public have, under both the First Amendment and the common law, a qualified right of access to judicial documents and records filed in civil and criminal proceedings. Public Citizen, 749 F.3d at 265. "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'" Id. at 265-66 (quoting in part Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988)). The First Amendment right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" Id. at 266 (quoting in part In re Wash. Post Co., 807 F.2d 383, 390 (4th Cir. 1986)).

13

When presented with a motion to seal, the law of this Circuit requires this Court to: "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000).

Here, the Plaintiff has attempted to allege claims for medical negligence and for violation of his civil rights while he was being held pursuant to an involuntary commitment order. The Plaintiff's claims rest on allegations that he received medical treatment from the Defendants, and therefore such allegations must be made on the public record.[4] The Court will not permit the Plaintiff to try this case in secret. The Plaintiff's motion for a wholesale sealing of this action is therefore denied. The Plaintiff's application to proceed without the prepayment of fees or costs shall remain under seal.

---

[4] To the extent that personal identifiers or particular sensitive health information were disclosed, the Plaintiff could seek leave to file such information under seal. However, the Complaint does not contain such information.

14

### D. Application to Proceed Without Prepayment of Costs and Fees

In order to proceed without prepaying fees or costs, a plaintiff must sign an application declaring under penalty of perjury to that the information provided is true. The Application submitted by the Plaintiff in this case is not signed with the Plaintiff's actual name but rather the initials "C.P.," for "Confidential Plaintiff." As such, the Court denies the Plaintiff's Application.

## O R D E R

**IT IS, THEREFORE, ORDERED** that:

(1) The Plaintiff's Application to Proceed in District Court without Prepaying Fees or Costs [Doc. 4] is **DENIED**;

(2) The Plaintiff's Motion to Seal [Doc. 1] the Complaint and all future pleadings in this matter is **DENIED**. The Plaintiff's Application [Doc. 4], however, shall remain sealed;

(3) The Plaintiff's Emergency Motion for Equitable Tolling [Doc. 3] is **DENIED AS MOOT**;

(4) The Plaintiff will be required to use his full name, and the full names of any identified Defendants, in any future pleadings; and

15

(5) This action is hereby **DISMISSED** for lack of subject matter jurisdiction.

The Clerk of Court is hereby directed to close this case.

Signed: September 30, 2019

**IT IS SO ORDERED.**

Martin Reidinger
United States District Judge